Agnes J. Brooks, Administratrix of the Estate of Frank E. Brooks, v. Kansas City Gas Company, Appellant.—127 S. W. (2d) 427.

Division Two, March 15, 1939.

*Charles H. Mayer* and *Charles M. Miller* for appellant.

*G. W. O'Donnell, W. R. Moore, Moore & O'Donnell* and *Walter A. Raymond* for respondent.

WESTHUES, C.—Frank C. Brooks brought this suit against the appellant, Kansas City Gas Company, to recover damages for the loss of an eye, alleged to have been caused by the negligence of the Gas Company. He obtained a judgment in the trial court in the sum of $8500. After a motion for new trial was filed and before a hearing was had on that motion, the plaintiff died. The cause was revived in the name of respondent, Agnes J. Brooks, plaintiff's wife, and administratrix of his estate. Thereafter the motion for new trial was overruled and the Gas Company appealed.

In the course of the opinion deceased, Frank C. Brooks, will be referred to as the plaintiff. Plaintiff's alleged injury to his eye occurred on June 3, 1925. The long delay in bringing the case to hearing was caused by plaintiff's neglect to file his suit until nearly five years after the alleged injury occurred. Then the case was permitted to lie dormant for a number of years. Thereafter plaintiff changed attorneys, and not until October 28, 1935, did the trial of the case begin. Since appellant contends that plaintiff's evidence did not support the verdict, we will state the facts as favorable to plaintiff's theory as the evidence warrants. Plaintiff became an employee of the defendant Gas Company in the year 1921, and continued in that employment, as a common laborer, to the date he claimed he was injured. Plaintiff had lost the sight of his right eye previous to 1921. This fact was known to the defendant company. Plaintiff was a member of a crew of seven men whose duty it was to test gas mains for leaks. This required excavations to be made at certain points so as to expose the gas mains. Two men, who were called "tappers," would then drill holes in the main. As these holes were drilled the instrument would also cut threads in the main so a metal plug could be screwed therein to prevent the escape of gas. Thereafter two men would remove the plug and insert small rubber bags or balloons in the pipe, one on each side of the hole, and pump air into these rubber bags so as to prevent the gas from escaping and to hold the gas in that part of the main where a test was desired. The excavations were made about a block apart. At one end only one hole would be drilled, while at the other three holes were required. It was at this point that a meter would be set for the purpose of

testing for leaks. Plaintiff, at the time of the alleged injury, was engaged in the work of placing rubber bags in a gas pipe. He testified that the pipe was cast iron and that when the hole was drilled a fine metal dust or drilling was left on the pipe, which he stated was supposed to have been dusted off by the tappers; that on this occasion the excavation had been made under a street car track, and therefore when he entered the excavation, which was about two feet in width, his body shut out most of the light; that after he removed the plug from the gas pipe the escaping gas blew the metal dust, which had not been cleaned off the pipe, into his face and eye; that he proceeded to place the rubber bags in the pipe and pump air into them; that the second bag burst and more drilling or dust was blown into his face, but not in his eye; that his eye began to pain him and he was compelled to call a fellow-workman to help replace the bag which had burst; that after the dust had been blown into his face he looked and noticed that it had not been brushed off the pipe. Plaintiff also testified that he informed the foreman of the job that something had blown in his eye and it was hurting. Thereafter plaintiff did not return to work. The next morning he was treated by the company doctor and a few days later was taken to a hospital where an operation was performed. He lost the sight of this eye and was, therefore, totally blind.

There was much evidence introduced which contradicted plaintiff's theory of how his eye was injured. That is, there was substantial evidence that plaintiff was not injured at the time and place he testified; also evidence of statements made by plaintiff which were contrary to his evidence at the trial. Likewise, evidence given by plaintiff in a deposition was introduced at the trial, and that evidence contradicted that given at the trial. While it seems to us from the record that plaintiff failed to prove, by a preponderance of the evidence, that he sustained an injury to his eye in the manner claimed, yet there was substantial evidence to support his theory, and therefore we must, for the purpose of this case, consider plaintiff's evidence as true. Appellant earnestly insists that taking plaintiff's evidence as true it did not create any liability against appellant. The charges of negligence submitted to the jury by plaintiff's instructions were: First, failure of the defendant to provide plaintiff with a reasonably safe place to work, in that the metal dust or drilling was left on the gas pipe where plaintiff was required to work; second, failure to furnish plaintiff with goggles; third, failure to warn plaintiff of the danger. The jury was instructed that if the defendant was negligent in regard to all three of the charges, or in any one of them, then the plaintiff was entitled to a verdict.

We are of the opinion that the evidence did not justify a verdict for plaintiff on the theory of failure to warn plaintiff of the danger.

Plaintiff had been working with the crew testing mains for some years. He testified that he was acquainted with all the work connected therewith, except that he did not know how to read meters. He had performed the task of placing rubber bags in gas pipes at least a dozen times, and on one occasion had the experience of having dust hit him in the face when he removed a plug from a pipe. He therefore fully appreciated the danger. In addition plaintiff had been a blacksmith and was familiar with drilling. He so testified. He also stated that he could, by feeling the metal dust, tell whether it was drilling from a cast iron pipe. Plaintiff, having worked with this crew for four years, must have known all about the customary methods of performing the work and the danger incident thereto. The applicable rule is stated as follows in 39 Corpus Juris, 499, section 612:

''Where a servant knows and appreciates the dangers of his employment, the master is under no obligation to give warning and instructions thereof, and the same holds true where by the exercise of reasonable care the servant could have known of the dangers likely to be encountered by him. So where the servant is as familiar as the master with the situation and the manner of performing the work, the master is under no duty to instruct him as to any risks, nor need a master warn or instruct as to dangers arising from matters of common knowledge, including those rising from the well-known operation of natural forces.''

Cases from most of the states are cited in support of the text, including cases from the Missouri and United States Courts. [See, also, Sweany v. Wabash Railroad Co. (Mo. App.), 80 S. W. (2d) 216; 39 C. J. 503, sec. 613.]

Neither did the evidence justify a finding for plaintiff on the charge of negligence in failing to furnish plaintiff with goggles. The evidence disclosed that the rule of the company was, that the men, while drilling or placing rubber bags in the pipe, should wear goggles. The evidence further showed that others did not wear them and were not required to do so. Only one man would drill at a time, and only one man was necessary to perform the task of placing the rubber bags in the gas pipes. The custom was for two men to attend to the drilling. One would remain on the outside of the excavation and watch the traffic for the protection of the other who was working in the excavation. The same custom prevailed as to the men placing bags in the pipes. All of the witnesses agreed that there were two pairs of goggles in the tool box. Some testified that there were more. Not one witness testified that there were no goggles in the tool box for plaintiff's use on the morning he claims he was injured. There was evidence that the drillers always wore goggles, but that the men placing bags in the pipes did not. Plaintiff did not testify that he looked or asked for goggles before he went to perform his task. But

if it was customary, or the rule of the company, to wear goggles, plaintiff's failure to wear them was his own fault. Compare this case with Schaum v. Southwestern Bell Tel. Co., 336 Mo. 228, 78 S. W. (2d) 439. There the plaintiff was required to work in a manhole and chip away the sides thereof with a hammer and chisel. He asked for goggles, stating that those in the tool box were broken, and the foreman advised him to work without them. A piece of brick or mortar struck him in the eye. This court held no case was made for the jury, because the nature of the work was not so inherently dangerous as to require the defendant to furnish goggles. There the danger of particles striking plaintiff in the eye was, in the writer's opinion, much greater than in the case under consideration. Plaintiff here, in removing the plug from the gas pipe, was in danger only at the moment the plug was removed. It would have been an easy matter for plaintiff to have turned his head at that moment. In the Schaum case, supra, the question of a master's duty in respect to furnishing goggles was reviewed at length and many cases and authorities considered. In the case before us plaintiff's evidence failed to show that the gas company was negligent in the matter of furnishing goggles, even if we assume that it was bound to do so.

As to the charge that defendant was negligent in that the men who drilled the hole in the pipe, where plaintiff claimed he was injured, failed to brush off the drilling or metal dust, the evidence showed the following: A witness for plaintiff, named Gant, testified that he aided in drilling the hole where plaintiff claimed he was injured; that they, in accordance with their instructions, brushed off the metal dust the best they could. It was shown that some of this metal dust always fell into the holes and that drilling hung in the threads cut by the drill. There was no evidence adduced that the dust was required to be brushed off for the purpose of affording protection for the baggers. It may have been necessary to do this to keep the drilling and dust from falling into the pipe in substantial quantities and there cause an obstruction to the flow of gas. The particles that hung in the threads were more apt to be blown out and carried with the flow of gas than those lying on the pipe beside the hole. Had the drilling been dusted off the pipe it would not have eliminated the danger. Plaintiff did not so contend, because had that eliminated the danger goggles would not have been necessary. Plaintiff's work was not unusually dangerous and there would have been no occasion for plaintiff to have the metal dust blow into his face and eye had he exercised ordinary care for his own safety. The danger of some dust being blown from the hole when the metal block was removed was a danger incident to the work itself in the same manner as the flying of the chips in the case of Schaum v. Southwestern Bell

1232

Tel. Co., supra. Plaintiff having failed to make a case for the jury other questions presented need not be considered.

The judgment is reversed. *Cooley* and *Bohling, CC.*, concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.