James P. COOPER, Appellant,

v.

Roy BURNLEY and J. C. Burnley, d/b/a Burnley & Son, Respondents.

No. 47857.

Supreme Court of Missouri,

Division No. 1.

March 13, 1961.

Motion for Rehearing or to Transfer to Court en Banc Denied April 10, 1961.

Burrus & Burrus, Rufus Burrus, Independence, for appellant.

Arthur C. Popham, Jr., Kansas City, Popham, Thompson, Popham, Trusty & Conway, Kansas City, of counsel, for respondents.

COIL, Commissioner.

James P. Cooper worked on a farm operated by a partnership composed of defendants Roy and J. C. Burnley. He was injured in February 1954 when he fell from a wagon while performing farm labor under the circumstances to be hereinafter described. He sought $25,000 as damages for injuries allegedly received as a result of the fall. The trial court directed a defendants' verdict at the close of plaintiff's case, and plaintiff has appealed from the judgment entered thereon.

Plaintiff contends the trial court erred in directing a defendants' verdict for the reason that he made a submissible case on five theories (to which we shall make specific reference hereinafter), and because he was not guilty of contributory negligence as a matter of law.

The evidence, in so far as furnished for our present review, consists of the testimony of the plaintiff and some excerpts from a deposition of J. C. Burnley read in evidence as admissions against interest. We shall state the relevant evidence.

Mr. Cooper, 52 at the time of the accident, went to work for defendants on March 8, 1953. He had always engaged in farming or related work except for some years spent in railroading. At the time of his employment to do general farm work, including stock feeding, he told J. C. Burnley that he could not raise his arms higher than just below shoulder-height. (J. C. Burnley acted for defendants-partners and plaintiff dealt with him throughout the period involved. We shall hereinafter call J. C. Burnley defendant.)

Plaintiff and defendant were engaged in feeding the stock cattle at the time of the accident. Defendant fixed and directed the method used to accomplish the feeding. That method remained the same each morning during the winter months of the 11-months' employment period, and thus the feeding process followed on the day of the accident and here described was the routine procedure which had been followed each morning, except that plaintiff and defendant, on occasions, exchanged jobs, i. e., one drove and the other loaded, and vice versa.

Used in the operation was a rubber-tired trailer wagon hitched to a tractor. The flat bed, about 4 feet wide and 12 feet long, was 14 inches deep. On the morning of the accident, plaintiff and defendant, as was their invariable custom, met at the barn about seven o'clock and, about 8:30, after having fed the "fat cattle," began the routine preparatory to feeding the stock cattle. Defendant drove the tractor and positioned the wagon at the silo. Plaintiff directed a half load of silage (½-inch pieces of chopped-up corn which was moist and spongy) from the silo chute into the front half of the wagon. The wagon was next positioned adjacent to a truck on which was baled hay. Plaintiff "threw" nine bales of hay from the truck onto the rear of the feed wagon. To do so, he picked up the bales by the baling wires. (There were hay hooks on the hay truck and hay hooks in the barnloft, but no hay hook was used by plaintiff in handling those bales.) The wagon was next positioned at a 4'-high stack of oats bales. Each bale was about 3 feet long and weighed 75 to 80 pounds. In response to defendant's direction to throw on two bales of oats, plaintiff took a bale off the top of the stack and by placing it against his stomach rolled it up on the wagon with his hands. (As we understand, that particular method

was used because of plaintiff's inability to raise his hands higher than his shoulders.) He intended to roll or throw the bale of oats on top of the bales of hay which were then on the rear half of the wagon, but the oats bale lodged on the silage in the front half of the wagon.

Plaintiff then climbed onto the wagon via its front end and stood knee-deep in the silage. He reached to pick up the bale of oats by its two baling wires intending to move the bale onto the bales of hay. Just as he lifted, one of the baling wires came untied and, as he described it, "it bursted right up into my face" (although plaintiff's evidence showed that the bale did not actually come apart), and "that threw me back * * * out of the wagon." Plaintiff said that the footing was "slick * *," not "solid like a floor." The unintended lodging of the oats bale on the silage was, of course, not an intentional step in the feeding routine and the morning of the accident was the only time such an incident had occurred. Plaintiff also said there was nothing unusual about his standing in or walking through the silage in the wagon, but that the time of the accident was the first time he had ever stood in silage and attempted to pick up a bale of oats.

Defendant, theretofore, had told plaintiff what to do with respect to the feeding operation in the sense that he had priorly outlined the routine; that routine was then followed without specific directions as to each detail. Defendant did not tell the plaintiff to climb upon the wagon to remove the oats bale from the silage and did not tell him, as we understand, at any time including the time of the accident, whether to use a hay hook to move bales or to lift them by the baling wires.

Plaintiff, born and reared on a farm, had been doing the kind of work involved in the routine feeding operation in which he was engaged at the time of the accident for years, and relied on his own experience to do many things in connection with the farm work, including the handling of hay bales. He was aware that hay hooks were available in the hayloft and said that there may have been some on the truck, and plaintiff's other evidence showed that hay hooks were on the truck at the time of the accident.

Plaintiff testified that it was usual and customary to handle oats and hay bales either by grasping the baling wires or by using a hay hook; that it was done both ways. He knew that baling wires sometimes broke, although the time in question was the first time it had happened to him. He knew that some of the wires on these particular oats bales were rusty and that the deeper the rust, the weaker the wire. He agreed that it was not entirely unexpected for a wire to "let go" and when handling a bale by the tie wire you try to keep yourself balanced so if the wire "lets go" you won't fall.

The bales of oats which formed the pile from which the one in question was taken on the morning of the accident had been obtained some two or three weeks before from another of defendants' farms where they had been stored in a barn. The oats probably had been baled two years prior to the accident. The bales were moved from the barn on the one farm to the place on the farm in question by plaintiff and defendant and, when loading for the move, plaintiff threw the bales onto the truck and defendant placed them, and, when unloading, defendant threw the bales off the truck and plaintiff stacked them. Plaintiff, at that time, handled each bale and noticed that some of the wires were rusty. The only examination defendant made was by handling the bales. Defendant did not warn plaintiff that the wires holding the bales together might come loose or break and defendant made no individual examination of the bales to determine how they were tied.

Defendant did not help or offer to help plaintiff load the oats bale or to remove it from the silage but remained seated on the tractor. Plaintiff did not

request help for that specific task or in connection with any phase of the entire feeding operation either that morning or at any other time.

The evidence supports a reasonable finding that defendant saw the plaintiff fall, but it is questionable whether the evidence supports a further inference that defendant saw plaintiff climb onto the wagon or knew plaintiff's purpose in so doing, or knew how plaintiff intended to accomplish that purpose.

Plaintiff contends he made a submissible case on either or all of these theories: failure of defendants to furnish sufficient help; failure to furnish suitable tools; failure to furnish a reasonably safe place to work; failure to have examined the oats bale to see if it was reasonably safe to be picked up by the baling wires; failure to have warned plaintiff of the unsafe condition of the place and that the wire was likely to come untied; and that defendants directed plaintiff to load the bale of oats without help and without the aid of a hay hook while standing on silage and when defendants knew or should have known that to do so would cause him to fall and be injured.

■ Viewing the evidence from the standpoint most favorable to plaintiff, and giving him the benefit of the reasonable inferences from all the evidence, we are of the opinion that the trial court correctly directed a defendants' verdict because, in our view, there was no substantial evidence to sustain the conclusion that defendants were guilty of any negligence which proximately caused injury to plaintiff. Our reasons for that conclusion will appear hereinafter.

As we have indicated, there was evidence from which the jury could have inferred that defendant saw plaintiff fall. It is extremely doubtful, however, that there was evidence sufficient to justify a reasonable inference that defendants knew or should have known that plaintiff went onto the wagon for the purpose of moving an oats bale by lifting it by grasping the baling wires and while standing knee-deep in silage. For present purposes, however, we shall assume that defendant did know or, in the exercise of ordinary care, should have known what plaintiff intended to do and how he intended to do it.

■ Plaintiff's brief treats with each of his aforementioned recovery theories separately. As we see it, however, plaintiff's strongest position results from a consideration of the principles involved in his separate theories in combination. In our view the meritorious question presented by the evidence and stated most favorably from plaintiff's standpoint is this, whether there was evidence from which a jury reasonably could have found that defendants were negligent in permitting plaintiff to proceed as he did to move the bale without warning plaintiff that a baling wire might break or come untied as he was lifting the bale and of the fact that his footing would be insecure, under these circumstances: when defendants knew or should have known that baling wires sometimes broke or came untied and when defendants knew or should have known that plaintiff would not use a hay hook but would move the bale by grasping the baling wires, and when defendants knew or should have known that plaintiff would be standing in silage which was slick and spongy, and when defendants had the means and ability to have physically assisted plaintiff or to have insisted that he use a hay hook.

It would appear that the decisive answer to the stated proposition, as well as to all or most of plaintiff's separate theories, is that plaintiff's own testimony demonstrates conclusively that defendants had no knowledge and in the exercise of ordinary care should have had no knowledge of the conditions and circumstances under which plaintiff was to act or of any dangers connected therewith which plaintiff did not also possess and appreciate. If that be true, there was no evidence from which the jury reasonably could have found that

there was any duty on defendants to prohibit plaintiff from proceeding or to warn plaintiff, or to physically assist plaintiff, or to insist that plaintiff use a hay hook.

Plaintiff's evidence demonstrates that he knew that his footing was insecure; that he knew it was not entirely unexpected for a baling wire to "let go" and that it therefore was necessary for him to keep his balance so that if a wire did "let go" he would not fall; that he knew that hay hooks were available (and there was no evidence that defendant did anything to prevent their use); that he knew the desirability, if any, for using a hay hook rather than grasping the baling wires; and that he did not request that defendant assist him in the operation. And certainly plaintiff, an experienced farmer, knew or should have known better than defendants whether he needed assistance in moving the bale under the circumstances of which he was aware, just as plaintiff must have been as fully cognizant as defendants could have been of any danger inherent in the operation which might have been eliminated by the assistance of another. In short, the evidence compels the conclusion that there was no danger involved in the moving of the bale of which plaintiff did not have or should not have had full knowledge and appreciation, and thus plaintiff failed to make a submissible case on failure to warn under the circumstances aforestated. Crandall v. McGilvray, Mo., 270 S.W.2d 793, 799; Brooks v. Kansas City Gas Co., 343 Mo. 1226, 127 S.W.2d 427, 429[2, 3].

While it is probable that the above conclusion, based as it is upon a consideration of the most favorable view of the case as a whole from plaintiff's standpoint, precludes plaintiff's recovery on any theory, nevertheless, we shall notice plaintiff's separate recovery theories not essentially included in the failure-to-warn question.

■ Plaintiff contends that defendants were negligent in failing to have inspected the bale to ascertain whether it was in safe condition for plaintiff to handle without a hay hook as he stood on the wagon bed. His specific argument in that respect is that if defendants had inspected the bale in question, they would have discovered that the baling wire was insecure and was likely to come apart if plaintiff attempted to lift the bale by grasping the wire. In the first place, there was no evidence, direct or circumstantial, supporting a reasonable finding that an inspection of the particular bale in question would have disclosed that the wire was insecure or about to come untied, at least, an inspection made any appreciable length of time prior to the exact instant of the casualty.

Furthermore, the evidence showed that the bales, including the one in question, had been recently inspected in a reasonable manner in that they had been twice handled by plaintiff and defendant, and, indeed, plaintiff had grasped the wires on the very bale in question immediately prior to the casualty when he threw it onto the wagon bed and it "flopped" over onto the silage. Moreover, the wire came untied when plaintiff grasped it, indicating that an inspection even an instant before plaintiff attempted to lift the bale might not have disclosed the likelihood that the wire would come untied if it were grasped one more time. But finally, and in any event, we have no hesitancy in holding that defendants had no duty to inspect the bale in question after each handling thereof and immediately prior to the next handling thereof in an effort to determine whether the baling wires were likely to come untied the next time the bale was lifted. We think the court's language in Crews v. Illinois Terminal R. Co., Mo. App., 260 S.W.2d 765, 768[5], is here apropos: "Neither does the evidence support the view that a reasonable inspection of the car would have revealed the box in its precarious position. The plaintiff ruled out this by his testimony that the box was not visible until he had moved freight from in front of it. It would, of course, be absurd to hold that the defend-

ant should have moved the freight to determine whether or not the car was properly loaded before directing an employee to move it."

■ In support of his assertion that defendants failed to furnish him a reasonably safe place in which to work, plaintiff says it was for a jury to determine whether a wagon bed, filled to a depth of 14 inches with "slick, spongy" silage, constituted a safe place for plaintiff to stand while attempting to move an insecurely tied bale of oats without the aid of a hay hook. In the first place that argument assumes, contrary to our conclusions above, that defendants were charged with knowledge that the bale was not securely tied and seems to assume, contrary to the evidence, that no hay hook was available for plaintiff's use. But apart from that and in so far as the wagon with the half load of silage was plaintiff's place of work to do one nonroutine job, viz., move the bale of oats from the silage to the rear of the wagon, the evidence is clear that if the place was unsafe it was so only because of the possibility that a baling wire might suddenly break or come untied just at the time plaintiff began to lift the bale. We have heretofore held that such a danger was or should have been fully known and appreciated by the plaintiff. It seems apparent, then, that a jury reasonably could not have found that defendants failed to exercise ordinary care to furnish plaintiff a reasonably safe place in which to work when plaintiff's evidence showed that he possessed full knowledge and appreciation of the danger which made the place of work unsafe, and when plaintiff voluntarily and without specific direction by defendant, chose that place of work to perform the isolated, nonroutine task.

■ Plaintiff's specific contention as to his claim that defendants failed to furnish sufficient help, is that there was a jury question whether defendant was negligent in not furnishing another helper or in not himself helping plaintiff remove the bale of oats from the silage. The difficulty with that contention, considered separately and apart from the question of the danger involved in moving the bale in the way plaintiff intended to move it, is that the evidence showed that plaintiff needed no assistance. The evidence requires the conclusion that he alone would have moved the bale easily but for the fact that the baling wire came untied. Plaintiff testified that the reason he fell was that one of the baling wires came untied when he attempted to lift the bale at a time when his footing was insecure. Thus, it seems to us, the real question as to additional help was whether defendants were negligent in permitting plaintiff to proceed to move the bale by the method he selected, when available physical assistance might have caused plaintiff to have moved the bale by some other unspecified method, which, in turn, might have eliminated the danger involved in the method selected by plaintiff. Plaintiff requested no assistance. He chose the place of work, and he chose the method of work. He was experienced in the type of work he was doing. As heretofore noted, he knew and appreciated the danger involved in doing the particular job in the way he chose to do it. Under those circumstances a jury reasonably could not have found that defendants failed to use ordinary care in permitting plaintiff to proceed to attempt to move the bale by the method he had selected without offering him physical assistance.

■ Plaintiff contends also that defendants failed to furnish suitable tools. He says specifically that if defendants had supplied him with a hay hook to use to move the bale of oats, the jury reasonably could have found that plaintiff would not have been injured. One plain answer to that contention is that the evidence showed that defendants did not fail to furnish a hay hook for plaintiff's use in moving bales, including the one in question. Plaintiff knew that hay hooks were

available and the evidence showed they were located in the hayloft and on the hay truck. Furthermore, plaintiff testified that the bales were customarily handled either by the use of a hay hook or by grasping the baling wires. There was no evidence that the latter method was not reasonably safe. It seems to us that the meritorious question as to hay hooks is whether defendants were negligent in not insisting that plaintiff use a hay hook under the circumstance that he was going to lift a bale of oats by gripping the baling wires at a time when his footing was insecure. Again the answer is that plaintiff said he knew that it was not unexpected for a baling wire to "let go" and that it was necessary for him to keep his balance so that if a wire did "let go" he would not fall. Thus, plaintiff had knowledge of and fully appreciated whatever danger was involved in not using a hay hook. The evidence would not support a jury finding that defendants failed to exercise ordinary care in permitting plaintiff to move the bale without using a hay hook.

Plaintiff has cited cases which state the duties of an employer to furnish his employee a safe place in which to work, to furnish him sufficient help, to furnish him proper tools, to inspect, to warn, etc. Those cases apply those well-settled principles to particular fact situations. None of those cases, however, is factually similar to the present case and none of them is by analogy persuasive of a different conclusion herein upon the facts in this record. No purpose would be served by reviewing and distinguishing those cases.

The judgment is affirmed.

HOLMAN and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.