Charles **HOLLAND**, Plaintiff-Respondent,

v.

Hoyt C. **LESTER**, Defendant-Appellant.

No. 8146.

Springfield Court of Appeals.

Missouri.

Dec. 5, 1962.

Motion for Rehearing Overruled Dec. 31, 1962.

Blanton & Blanton, David E. Blanton, Sikeston, for appellant.

Sharp & Hatley, Charles C. Hatley, New Madrid, for respondent.

McDOWELL, Judge.

This appeal is by defendant, Hoyt C. Lester, from a verdict and judgment of $2,000 in favor of plaintiff, Charles Holland, for personal injuries sustained when defendant's truck collided with, and ran over plaintiff, on Missouri State Highway 162 in New Madrid County, Missouri.

Plaintiff's petition was based upon both primary and humanitarian negligence on the part of defendant but was submitted to the jury only on the theory of humanitarian negligence.

Defendant's answer was a general denial and a plea of contributory negligence.

The cause was submitted to the jury on plaintiff's evidence. Defendant, at the close of plaintiff's case and at the close of all of the evidence, offered a motion for directed verdict and stood on the same, offering no evidence. The verdict was a ten-man verdict. Defendant filed an after-trial motion for judgment in keeping with his motion for directed verdict which was by the court overruled, resulting in this appeal.

There are two issues raised on this appeal. First, that plaintiff's petition failed to state a cause of action based on humanitarian negligence.

Second, that the evidence offered by plaintiff failed to sustain the burden of proof of the essential elements of humanitarian negligence and the court erred in submitting the case to the jury on that theory.

We will state the evidence offered by plaintiff which is most favorable to him. On September 8, 1961, plaintiff left his place of employment at an Arnold, Missouri, filling station, after work hours, and started to Gideon to pick up his wife. He had car trouble, left his automobile at St. Genevieve and caught a bus for Portageville, where he arrived early in the morning on September 9th, got off the bus and started walking from Portageville to Gideon. He testified he walked down through the town of Portageville and got on Missouri State Highway 162. He was dressed in a pair of tan pants and a light blue shirt. Plaintiff testified that he stopped at the corner of the intersection of said highway and a north and south road, which was located on the west side of Portageville, and smoked a cigarette while he was waiting for a car coming from the west to pass. He testified he started walking in a westerly direction on the north side of Highway 162 toward Gideon and that, as he was approaching a house on the north side of said highway, he heard some dogs barking which he knew to be mean; that he started to cross the road to the south

side when he blacked out or fell asleep; that he did not know whether he got across the road or where he was. He said the next thing he remembered was that he came to under the defendant's pickup truck, south of the white line. The evidence is undisputed that plaintiff's body was just south of the white line in the center of the road, his head toward the west and his feet to the east. Plaintiff's evidence is that he had no knowledge whatsoever as to how defendant's truck got straddle of him in the center of the road. He testified that his body from his chest back was under the truck. There was other evidence on the part of plaintiff that his head was just sticking out from under the hood at the front end of the truck. The evidence is that plaintiff hollered for them to get him out from under the truck or jack up the truck; that defendant and a lady by the name of Hatfield were in the truck at the time of accident and that John Via and Judge Wright were in a station wagon which they parked some 30 or 40 feet on the north side of the road from where the accident occurred with about a third of their car on the pavement; that Via got in the truck and backed it off of plaintiff and that Mrs. Hatfield and defendant got him up, put him in the truck and took him to his mother-in-law's home in Gideon; that defendant got an ambulance and helped put plaintiff in the same and he was taken to the hospital at Kennett. That defendant took plaintiff's mother-in-law and a small girl to the hospital so they could be with plaintiff.

Shortly after plaintiff was removed to the hospital, he told a Missouri Highway Trooper that he started across the road, saw car lights coming from the west toward him; that he didn't know what happened to that car, whether it got him or not, and that he next remembered waking up or coming to under defendant's pickup truck, which had stopped straddle of him. He stated he was under the front end of the truck and it had to be backed off of him; that the wheels of the truck had not

run over him. It was about an hour and forty-five minutes from the time he got off the bus.

The evidence is that the defendant, accompanied by one, Marjorie Hatfield, a young, estranged, married matron, had engaged in a nighttime of extracurricular activities. During the evetide and the night that followed, the defendant, accompanied by his guest, had something to drink at Gibbs Bar in Gideon before going to Wardell where, at a bar, he had about three beers and, later in Caruthersville at the "Climax", he had some kind of little drink in a glass—"maybe two, three or four, or something like that", but had nothing to drink after 10:00 o'clock P.M. Later, they went to a room. Early the next morning defendant, with his guest, started to return from Caruthersville to Gideon via Portageville. After he left Portageville, going west on Highway 162, he was following a station wagon. The lights on his pickup truck at the time were on dim and the lights on the station wagon were on high beam. The evidence is that as the station wagon turned west from the intersection of Highway 162 and a road running north and south at the west side of Portageville, the driver observed an object in the road in front of him but could not determine what it was. As he approached, in about 200 feet of the object, he observed it was a man lying on the south traffic lane just south of the white line in the road. The driver started to stop but, because the road at the place where plaintiff's body was lying was so narrow, he stopped 30 or 40 feet west beyond where plaintiff was lying and parked his station wagon on the north side of the road leaving about one-third of it on the pavement.

The defendant slowed down before he got to the station wagon, then speeded up to about 50 miles per hour to pass and gradually swung over to the south side of the road and came to a stop, straddling plaintiff who was, at the time, lying in the middle of the road.

John Via testified that when he saw that the object in the road was a man he looked back to see the lights of defendant's car to see whether he was going to run over him. He stated he did not know how far defendant's car was from plaintiff at the time he turned to the south to pass; that the accident occurred about 4:10 A.M., and it was still dark.

The evidence is undisputed that the wheels of defendant's truck did not run over plaintiff; that as the front of the truck was going over plaintiff, Mrs. Hatfield saw plaintiff and screamed. The defendant applied the brakes. Mrs. Hatfield did not know whether it was before or after she screamed that defendant asked "What was that?" and she said, "It's a man." She testified that the defendant was not intoxicated at the time of the accident. The plaintiff's wife, who talked to the defendant after the accident, and her mother, who rode with defendant in the pickup truck from Gideon to Kennett, testified that they smelled alcohol on defendant but admitted that defendant had no difficulty in driving the truck.

The Trooper talked to the defendant at 5:50 A.M., on the day of the accident and testified that he did not appear to be under the influence of intoxicants. Defendant did not take the stand and no evidence was offered on his behalf. There was no evidence offered as to the width of the road at the place of accident. There was evidence by John Via that they had to drive past the body to find a place wide enough to park; that the road at the place of accident was very narrow. The Trooper testified that he did not measure the road at the place of accident as to width; that he thought there was a shoulder on the road about two feet wide and ditches on each side about two feet deep. However, his report showed there were no shoulders on the road at the place of accident.

The plaintiff testified that he had walked about 200 to 300 feet west from the corner

where he entered Highway 162 to where he started to cross the road and had his blackout.

In our opinion we will refer to appellant as defendant and to respondent as plaintiff, the position occupied by the parties in the lower court.

 It is defendant's first contention that the amended petition did not contain all of the essential elements of a charge of humanitarian negligence in that it was not alleged that the defendant could not have avoided collision between the defendant's pickup truck and the plaintiff, who was lying on the traveled portion of the road, with safety to himself and his passengers. That the trial court erred in not sustaining defendant's motion for directed verdict because the petition failed to state a cause of action.

We find there is no merit to this contention. This point was decided by the Supreme Court, en banc, in Fenneren v. Smith, Mo., 316 S.W.2d 602, 605 [1, 2]. This very contention was before the Supreme Court and the court stated:

"Before approaching the review of plaintiff-respondent's contentions, we shall consider the contention of defendants-appellants that plaintiff's petition was insufficient in stating a claim of negligence under the humanitarian rule. Plaintiff had alleged that, although 'the defendants saw or in the exercise of the highest degree of care, should have seen the automobile the plaintiff was driving " 'in a position of imminent peril and danger of being struck by the truck, in time thereafter to have by the exercise of the highest degree of care on the part of the defendants, stopped the said truck, or swerved the same aside, or diverted the course thereof, or to have given a signal of warning nevertheless, defendants neglected and failed to do any of said acts so as to prevent the collision.'

"It is noted the averment does not include an allegation to the effect that, after

they knew or should have known plaintiff was in a position of imminent peril, defendants had the present ability with the means at hand to have averted the impending injury *'without injury to himself or others.'* Defendants-appellants particularly complain of plaintiff's failure to plead the quoted italicized phrase. See constitutive fact '(3)' of a claim under the humanitarian rule as set forth in Banks v. Morris & Co., 302 Mo. 254, at page 267, 257 S.W. 482, at page 484. The petition properly should have more definitely averred facts equivalent to constitutive fact '(3)', including the phrase 'without injury to himself or others,' but we think the petition should not be held bad because of the omission. Liberally construed, we think that by fair intendment the quoted averment included the essential elements of a claim under the humanitarian rule, and we have no doubt defendants knew plaintiff was intending to state facts calling for the application of the rule. (This is not to say it is unnecessary to hypothesize and submit, in effect, the constitutive facts, or facts essential to a plaintiff's recovery under the rule, including the fact of a defendant's present ability, with the means at hand to have averted the impending injury *without injury to himself or others*, except in a case where there is no substantial evidence that defendant in acting to avert the impending injury would have endangered the safety of himself or others, there is no error in omitting the phrase we have italicized. Eller v. Crowell, Mo.Sup., 238 S.W.2d 310, and cases therein cited.)"

In the instant case the petition failed to put in the words "without injury to himself or others". The Supreme Court, in the above case, on this question definitely holds that a petition under the humanitarian negligence rule does state a cause of action without this allegation.

In submitting the case to the jury by the giving of instruction No. 1, 'the court did hypothesize all the facts necessary to con-

stitute humanitarian negligence. We find against defendant on this alleged error.

Defendant's second alleged error is that the evidence offered by the plaintiff and the permissible inferences therefrom, considered in the light most favorable to plaintiff, did not support the submission of the case to the jury on the ground of humanitarian negligence and that the court erred in refusing defendant's after-trial motion for judgment in accordance with his motion for judgment made at the close of all of the evidence.

■ We agree with defendant's contention that where defendant's petition alleged both primary negligence and humanitarian negligence and the cause was submitted solely on the humanitarian doctrine, plaintiff abandoned the pleaded primary negligence and the trial court's inquiry on defendant's after-trial motion for directed verdict was whether plaintiff made a submissible case on his only submitted assignment and the inquiry on appeal should be so limited. Section 510.290 RSMo 1959, V.A.M.S.; Farmer v. Taylor, Mo.App., 301 S.W.2d 429, 434 [9].

■ Our review of the submissibility of plaintiff's case is on the theory upon which plaintiff grounded his recovery. We review the evidence in the light most favorable to plaintiff, give plaintiff the benefit of all favorable inferences arising therefrom and disregard defendant's evidence unless it aids plaintiff's case. But the favorable consideration of the evidence rule calls for a consideration of all the facts shown by plaintiff, not merely part of them isolated from the rest; and it does not require courts to supply missing evidence or disregard the dictates of common reason and accept as true that which obviously, under all of the record, is not true or to give plaintiff the benefit of any other than reasonable inferences. Kirks v. Waller, Mo., 341 S.W.2d 860, 863 [2, 3] (and the numerous authorities cited therein); Cooper v. Burnley, Mo., 345 S.W.2d 74, 77

[1]; Davis v. Quality Oil Company, Mo., 353 S.W.2d 670, 671 [1]; Allen v. Hayen, Mo., 320 S.W.2d 441.

■ In a humanitarian case, as in other actions, the burden is on the plaintiff to establish by substantial evidence of probative value or by the reasonable inferences therefrom, every essential element of his theory of submission. Vietmeier v. Voss, Mo., 246 S.W.2d 785, 787. The plaintiff must present such evidence from which a jury may reasonably find where the plaintiff did in fact come into a position of imminent peril. "Evidence that is merely speculative, a guess or conjecture is not sufficient for a jury to find where the position of imminent peril began." Paydon v. Globus, Mo., 262 S.W.2d 601, 603; Yarrington v. Lininger, Mo., 327 S.W.2d 104, 109 [6, 7].

In the instant case the cause was submitted on humanitarian negligence that: "Defendant saw, or in the exercise of the highest degree of care should have seen plaintiff in a position of imminent peril and danger in time thereafter with the means at hand to have stopped, slackened or slackened and swerved said vehicle and thereby avoided striking and injuring plaintiff." So, the question presented for determination under this issue is whether there was substantial evidence to support this charge of negligence.

■ We stated in Glenn v. Offutt, Mo.App., 309 S.W.2d 366, 369 [5, 6] that: "An essential element of a cause of action under the humanitarian doctrine is that, after (either actual or, in a discoverable peril case, constructive) notice of plaintiff's position of imminent peril, defendant must have had the present ability with the means at hand to have averted the threatened harm without injury to himself or others [West v. St. Louis-San Francisco Railway Co., Mo., 295 S.W.2d 48, 52(5), and cases there cited]; and, since the humanitarian doctrine blots out all antecedent or primary negligence and seizes upon the situation as

it exists when imminent peril comes into being [Martin v. Effrein, 359 Mo. 1150, 225 S.W.2d 775, 779(10); Johnson v. St. Louis Public Service Co., 363 Mo. 380, 251 S. W.2d 70, 75(6)], the ability of defendant thereafter to have averted the impending accident must be determined on the basis of the factual situation existing, and the means and appliances available, at the instant imminent peril arose." Kelly v. Lahey, Mo.App., 232 S.W.2d 177, 179.

In the instant case the evidence is that defendant was driving west in his pickup truck with his lights dim following a station wagon going in the same direction with its lights on high beam. The station wagon was being driven by one, Judge Wright, and riding with him in the front seat was witness Via. There is some discrepancy in plaintiff's testimony as to how far west on Highway 162 plaintiff was lying in the road just south of the white line. Plaintiff testified as he left the intersection of the highways, at the edge of the city of Portageville, he had gone west on the north side of Highway 162, 200 to 300 feet. There was evidence that plaintiff's body was some 20 feet east of highway signs on said highway, which signs were about 300 yards from the intersection of the roads. The evidence is undisputed that plaintiff's body was in the traveled part of the highway in the south lane of traffic as the traffic goes west and one of plaintiff's witnesses stated that you could see a part of the white line between the body of plaintiff and the center of the road.

Plaintiff testified that he had blacked out or fallen asleep on the road and he knew nothing of the facts except that when he regained consciousness he was underneath defendant's truck. Mrs. Hatfield testified for plaintiff that defendant was going west in the north lane of traffic, following the station wagon; that the station wagon slowed down and defendant speeded up to pass and that, as he turned into the south lane of traffic, she saw plaintiff in the road just as the car started over him. She testi-fied that defendant was driving about 50 m. p. h. when he started to turn into the south lane to pass the station wagon, which was slowing down; that defendant put on his brakes and stopped astraddle of plaintiff's body and asked her what was in the road. A patrolman testified for plaintiff that he did not know how wide the highway was at the place of the accident. He stated, in his report, that there were no shoulders on the road but testified he thought there were shoulders about two feet wide and a ditch on the south side of the road about two feet deep.

Via, a passenger in the station wagon, testified that when they started west on Highway 162, they saw an object in the road but could not tell what it was until they got to within about 200 feet when they discovered it was a man. He stated they started slowing down and the driver of the car, in which he was riding, started turning to the right; that because of the narrow road at the place where plaintiff's body was, they had to drive past him about 30 to 40 feet when their car stopped on the north side of the road with the car about one-third on the pavement. He was asked how far defendant's truck was from the place where plaintiff was lying on the road when he started to turn into the south lane and stated that he could not tell.

Under plaintiff's evidence we must hold that plaintiff failed to make a submissible humanitarian negligence case. In the first place, there was evidence that defendant's truck, at the time he started to turn into the south lane, was traveling at a speed of about 50 miles per hour. There was no evidence as to the condition of the road, the width of the road, or as to the distance in which defendant's truck could be stopped prior to the accident. The record is devoid of any evidence from which the jury could determine at what point defendant could by the exercise of the highest degree of care have discovered plaintiff in a position of imminent peril. It does show that defendant's truck was traveling with

the lights on dim but it does not show in what condition the brakes were on defendant's truck nor how close the truck was when defendant could have discovered the imminent peril of plaintiff or the distance within which he could have stopped his truck or the relative position of the truck and plaintiff at the moment when defendant could first be charged with actual or constructive notice of plaintiff's perilous position.

One of the essential elements of the humanitarian rule is that defendant, after receiving such notice (of a person in a position of imminent peril), had the present ability with the means at hand, to have averted the impending injury without injury to himself or others. There is a total failure of proof as to this element.

We think that from the evidence offered plaintiff could not have been in a position of imminent peril as long as defendant's truck stayed in the north lane of traffic. For if he had stayed in the north lane of traffic the accident could not have happened so the point of discovery of imminent peril on the part of defendant had to be when he started to turn into the south lane of traffic to pass the station wagon in front of him and the evidence is wholly devoid as to where that point was. In fact, we think the only reasonable inference that could be drawn was that defendant's truck must have been in such close proximity to plaintiff's body there on the highway that it could not have been stopped, slackened or slackened and swerved in time to have avoided hitting plaintiff. It will be noted that plaintiff's body was right along the center line, according to plaintiff's testimony, and the truck straddled his body. Neither of the wheels struck plaintiff. Therefore, defendant's truck must have been astraddle the white line. See Branscum v. Glaser, Mo., 234 S.W.2d 626, 628 [4–6] and cases cited therein; Glenn v. Offutt, supra, 309 S.W.2d p. 369 [7, 8].

We agree with the contention of defendant that the only way a jury could have found for plaintiff was by guess, speculation, and conjecture.

The cause reversed and remanded with directions that the judgment in favor of plaintiff be set aside and judgment entered for the defendant.

RUARK, P. J., and STONE, J., concur.