Barbara Lee **HARTLAGE**, an infant, by and through Neva Mae Hartlage, her next friend (Plaintiff), Respondent,

v.

Edward **HALLORAN** (Defendant), Appellant.

No. 30202.

St. Louis Court of Appeals.

Missouri.

Jan. 19, 1960.

Rehearing Denied Feb. 17, 1960.

Supplemental Opinion, Feb. 17, 1960.

Schwartz & James, Harry M. James, St. Louis, for appellant.

Charles Mogab, Celo V. Barnhart and Barnhart & Sommers, St. Louis, for respondent.

WOLFE, Presiding Judge.

This is an action for damages arising out of personal injuries sustained by the plaintiff. It was alleged that the injuries were sustained when the defendant's automobile struck plaintiff. There was a verdict and judgment for the plaintiff in the sum of $5,000, and the defendant prosecutes this appeal.

The following evidence was presented on behalf of the plaintiff. A deposition given by Edward Halloran, the defendant, was introduced. It disclosed that in July, 1955, he lived somewhat over two blocks from the place where the plaintiff lived. The plaintiff, who was five years old at the time of the occurrence in question, lived at the home of her parents at 7729 General Sherman Lane in St. Louis County.

On the morning of July 18, 1955, Halloran was driving his 1954 Pontiac automobile. He was going to pick up a friend named Bockskopf, who lived at 7708 General Sherman Lane. The day was sunny and warm, and visibility was good.

General Sherman Lane is of concrete paving and is 20 feet in width. In the vicinity of the plaintiff's home it runs in a general east and west direction. There are no sidewalks, and the front lawns of the properties fronting upon the lane come down to the curb. The houses, which are of one story with a garage attached, are set back 30 feet from the curb. There are no fences in front of the houses, and the lawns from the curb to the houses are visible as one drives down the lane. The lots were estimated to be 60 feet in width. There are driveways from the street to the garage with walks from the driveways to the front door of the houses. There are about twenty houses in the 7700 block of General Sherman Lane, and Halloran estimated that about ten families with children lived on the lane. Another witness who resided on the lane said there was actually six families with small children.

Halloran stated in his deposition that he was traveling eastwardly after turning into the lane. The right side of his automobile was about two feet from the south curb, and the left side was about two feet from the center line, or twelve feet from the north curb. He was traveling at a speed of about 20 miles per hour or less for a distance of 300 feet when he heard a "thump" toward the rear of the car on the driver's side. He stopped his car to see what caused the noise. He traveled about 40 feet in stopping. · He then got out on the left side, where he saw Barbara Hartlage, the plaintiff, lying on the pavement just about a foot north of the center line of the lane. He had seen some children when he first entered the lane, but Barbara was not among them and he at no time saw the child prior to the accident. A Mrs. Harper, who lived across the street from the Hartlage home and on the side of the street that Halloran was driving, carried the child to the Hartlage house. Halloran followed and phoned the police for an ambulance.

Halloran testified that right after the accident he noticed a milk truck headed west on the north side of the street. He did not see the truck prior to the accident. He stated that the truck was parked in front of the house. He later stated that it was about two houses west of where the accident took place, but not in front of the Hartlage house. He then said it was parked 40 or 50 feet west of the entrance to her house, and he also testified that it was parked about 80 feet from where the accident took place. He saw no marks on the left side of his car.

Mrs. Harper testified that she was watering some flowers in front of her house on the morning of the accident. She said that her back was to the street, but that she turned around for some unknown reason. As she did so, she saw Halloran's automobile passing at a slow rate of speed. She saw Barbara under Halloran's car in the exact middle of it "flipping like a cardboard box will flip". She saw her

come out from under the car. Barbara was then lying in the street slightly to the north of the center line in front of the Hartlage home. She said that the child was unconscious as she picked her up and carried her into the Hartlage home. The witness stated that the child appeared to be bruised and skinned in several places. Her clothing was torn, and some of her hair had been pulled out. She had grease on some of her clothing. She said that she must have screamed when she first saw the child under the car. She said that Halloran stopped his car as quickly as he could. She said that she saw no milk truck. No one saw the child prior to the accident.

It is not necessary to set out the evidence as it relates to the injuries for there is no issue presented regarding them. The only serious injury was a broken leg, which has healed well. ·

Halloran, who was said to be seriously ill, did not testify in court, but the driver of the milk truck testified on behalf of the defendant. He stated that he was delivering milk to the Hartlage home on the morning of the accident. He had parked his truck at the Hartlage driveway. As he brought his truck to a stop he reached to the back to get a half-gallon container full of milk, and at that time he heard a thud near the left rear end of his truck. He heard a woman scream. As he got out of the truck he saw Halloran's automobile about two car lengths to the back of his truck, and the child in the middle of the street. He did not see the child before that time, nor did he see Halloran's car before the accident. Bockskopf, the man whom Halloran was to pick up, was standing by his garage door. He did not see the accident, but he said that he saw the child being picked up, and also saw the milk truck parked "right at the driveway".

This case was submitted to the jury upon a humanitarian theory of a failure to warn and slacken speed, or swerving or stopping the automobile. It was also submitted on two theories of primary negligence. The

first was predicated upon traveling at an excessive speed. The second was upon failure to keep a lookout.

It is conceded that no one saw the plaintiff before she came into collision with the defendant's automobile, and that no one knows where she was prior to that time nor in what direction she was crossing the street, if she was in fact crossing it. The appellant contends that the plaintiff failed to make a submissible case and that the court erred in not directing a verdict in favor of the defendant in accordance with his motion.

 Despite the fact that the plaintiff was but a child of five years of age, the burden was upon her to show that her injury was the direct and proximate result of the defendant's negligence. Vietmeier v. Voss, Mo.Sup., 246 S.W.2d 785. To hold a defendant under the humanitarian doctrine, there must first be evidence that the plaintiff was in a position of imminent peril. Banks v. Morris & Co., 302 Mo.Sup. 254, 257 S.W. 482; Hendrick v. Kurn, 352 Mo.Sup. 848, 179 S.W.2d 717; Blaser v. Coleman, 358 Mo.Sup. 157, 213 S.W.2d 420; Farmer v. Taylor, Mo.App., 301 S.W.2d 429.

 There is absolutely no evidence of the position of the plaintiff prior to the time of her collision with the defendant's automobile, nor is there any evidence of her course of travel, nor evidence from which it may be determined that she reached a position of imminent peril in time thereafter for the defendant to act. Wapelhorst v. Lindner, Mo.Sup., 269 S.W. 2d 865.

The plaintiff relies upon three cases: Wright v. Osborn, 356 Mo.Sup. 382, 201 S. W.2d 935; Burroughs v. Henn, Mo.App., 269 S.W.2d 900, and Payne v. Reed, 332 Mo.Sup. 343, 59 S.W.2d 43. In all of these cases there was evidence that the plaintiff was either walking or running, and evidence from which the direction of the

plaintiff's movements prior to the accident could be determined. As we have stated, this is wholly lacking in the case before us. Since the evidence is wanting in this particular, we hold that no humanitarian case was made.

The theory of the defendant was that the child in all probability ran from behind the milk truck into the side of the defendant's car as it was passing. The plaintiff, however, predicated her case upon the evidence of the neighbor who said that she saw the child under the car and this was evidence that the child was struck and run over by it.

 The instruction on excessive speed was based upon the milk truck being "80 feet or less west of the point of contact", and that in view of this the jury could find that the defendant was negligent in traveling "20 or more miles per hour". There was no evidence that the defendant was traveling more than 20 miles per hour, and the presence of the milk truck would be of no significance unless the plaintiff came from the rear of it. The only evidence of this is that the defendant heard a thud toward his left rear fender. This is at war with plaintiff's theory that she was run over by the automobile. Under the extremely scant facts available, the evidence did not support this submission.

As to the failure to keep a lookout, we are confronted with the question when and where the defendant could have seen the plaintiff and where his automobile was at the time. It is therefore only by conjecture, without supporting evidence, that it could be concluded that the defendant failed to keep a lookout and that the failure was the proximate cause of the injury.

We are of the opinion that the plaintiff did not make a submissible case and that the court erred in overruling defendant's motion for a directed verdict.

For the reasons stated, the judgment is reversed.

ANDERSON and RUDDY, JJ., concur.

### Supplemental Opinion

PER CURIAM.

■ The death of the defendant Edward Halloran having been suggested and shown to have occurred after the final submission of this case in this Court, it is ordered that the judgment of this Court reversing the judgment of the Circuit Court be entered as of October 8, 1959, the date of such submission. George F. Robertson Plastering Company v. Magidson, Mo., 271 S.W. 2d 538, loc.cit. 543, and cases therein cited.