William MILLER, a Minor, by Forrest Miller, His Father and Next Friend (Plaintiff) Respondent,

v.

Mattie DOWLING (Defendant) Appellant.

No. 30967.

St. Louis Court of Appeals.

Missouri.

Sept. 18, 1962.

Evans & Dixon, John C. Shepherd and Paul V. Gilbert, St. Louis, for appellant.

Marvin L. Dinger, St. Louis, for respondent.

WOLFE, Judge.

This is an action to recover damages arising out of personal injuries. The injuries were sustained when a bicycle upon which the plaintiff was riding came into collision with an automobile operated by the defendant. There was a verdict and judgment for the defendant, but the trial court sustained plaintiff's motion for a new trial, and the defendant has appealed.

The evidence presented by the plaintiff consisted, first, of the testimony of the plaintiff William Miller. He stated that he was eleven years old at the time of the accident, which occurred on the afternoon of September 9, 1959. He was riding his bicycle southwardly on Hamilton Avenue in the City of St. Louis. His five-year old brother was seated on the back fender of the bicycle.

They had gone down a slight incline to a point in front of a drive-in theater, where the street leveled off, but beyond that, in the direction of travel, it started uphill again. The street was a two-lane street, and he was close to the center of it. He said that he heard a horn sound just before the accident. He said that his left leg was struck by defendant's automobile, and his bicycle fell to the right. As it hit the pavement it was to the right of the center of the road. He fell with the bicycle on top of him, but got up.

His home was nearby, and his father and aunt came to the scene of the accident. His mother later took him to a Dr. Kastning. He stated that he had to stay in bed for a while, and lost eleven days of school, which started on the following Monday. He said that he applied hot towels to his leg "for a week, two weeks, a week and a half, I imagine." He was asked on cross-examination if his bicycle started wobbling from side to side before the accident happened, and he said he did not remember. He was recalled, after a luncheon recess, by his lawyer, and said that he remembered that he was traveling in a straight line and on the right side of the road.

A police officer called to the scene stated that, according to the statement of the parties, the bicycle hit the side of the automobile. He said that there were no witnesses other than the parties to the accident. Two boys who were in the parking lot of the drive-in theater at the time of the accident did not see the actual collision. One of them said that he saw the car push the bicycle about two car-lengths, and the other said that he saw it push the bicycle about ten feet. One of them said that a boy was riding on the handlebars of the bicycle.

The mother of William testified that she was employed by a drug store and was working at the time of the accident. She said she went home as soon as she heard of it. She cleaned the boy up and took him to Dr. Kastning, who was a customer of the drug store where she worked and had his office on the floor above.

Dr. Kastning described the treatment he gave the boy and stated that he recommended to his parents that they should get a lawyer. He stated that he did not recom-

mend the lawyer employed by the parents of William, and that he did not know their lawyer prior to his employment in the case. On the question of suggesting a lawyer, he stated in part as follows:

"Q. Have you been paid, Doctor?

"A. They paid me some, yes—

"Q. And as I understand it, sometime in October you explained to them not to worry about it, you would work it out with a lawyer, is that the substance of it?

"A. No, it wasn't the substance of it. If they do get a lawyer and we are assured of getting paid for services we will go ahead and give the boy what he needs.

"Q. But if some lawyer will guarantee you will get paid you would go ahead?

"A. No, they don't guarantee—I wish they would.

"Q. What do you mean by 'guarantee'?

"A. They generally pay the doctor bill if they win the case, and if they don't pay—it's charity.

"Q. It's to your interest to win the case?

"A. Well—yes."

Defendant's evidence was that she had turned south on Hamilton Avenue and she saw the boys on the bicycle as she was going toward them, in the same direction of travel. Her speed at the time she was approaching them was 20 miles per hour. She sounded her horn and the bicycle pulled to the right of the road. She then pulled to the left past them, and traveled very slowly. She noticed the bicycle wobbling and stopped on the left side of the road, as the bicycle came toward her car. William put his hand out against the right fender, and the bicycle fell to the right with the boys on it. The only mark on the car was William's handprint in the dust on the fender. The boy did not appear to be hurt. The defendant's brother, who was a passenger in the car at the time of the occurrence, testified for the defendant, and his testimony as to the material facts was about the same as the defendant's.

The supervising principal of the school testified on behalf of the defendant. He had the school records, which showed that school actually started the day before the accident, and that William Miller was absent then and on the day of the accident, but from the following Monday on he had a perfect attendance record for two weeks, and then he was absent for two days.

As stated, the jury returned a verdict for the defendant, but the trial court sustained plaintiff's motion for a new trial on five specified grounds. The first of these is as follows:

"The Court erred in permitting the introduction of irrelevant, immaterial and prejudicial evidence offered by and on behalf of defendant—specifically, allowing defendant to introduce evidence concerning the whereabouts of a witness not then in the courtroom, although proper objection had been made by plaintiff's counsel."

The matter covered by this assignment of error arose when the defendant started to put on her evidence. Plaintiff's lawyer, out of the presence of the jury, said to the court that there was a possibility that defendant's counsel might make a statement "concerning the whereabouts of one of the passengers in the automobile." He asked the court to instruct defendant's counsel not to make such a statement in the presence of the jury "unless he is able to elicit it from a witness". Counsel for the defense then agreed that such was the proper way to go about the matter.

The defendant testified that her brother was in the car with her, and that he lived in Oklahoma City. The testimony was interrupted by an objection on the part of plaintiff's counsel. Defendant's counsel

then stated to the court that it was his responsibility to account for a failure to produce a witness more available to him than to the plaintiff's counsel, and that if he failed to do so, plaintiff's counsel might draw unfavorable inferences from the absence of the witness. The court then asked plaintiff's counsel if he would agree not to mention the absence of the witness, and plaintiff replied that he would not so agree.

The witness testified that she went to the railroad station, the second morning of the trial, to meet a train upon which her brother was to arrive. She was informed that the train had been rerouted because of a wreck on the line, and that it would not be in until 1:00 p. m. There was another objection by plaintiff's counsel, which the court sustained. The court then informed defendant's counsel that the court would wait for the arrival of the witness and instructed the jury to disregard the evidence relative to the train and the brother. Nothing more was requested of the court by plaintiff's counsel, and the witness did later appear and testify.

■ We are not enlightened in any way by the plaintiff as to how this could possibly have prejudiced plaintiff's case, nor does anything in the proceedings that took place suggest to us that prejudice to the plaintiff's case might result therefrom.

This assignment was without merit and cannot support the granting of a motion for a new trial.

The next assignment of error upon which the court granted a new trial is as follows:

"Counsel for defendant injected irrelevant, immaterial and prejudicial matters into the case, specifically, defendant's counsel stated, in his opening statement and on numerous occasions throughout the trial, that the case was offered to plaintiff's counsel by Dr. H. E. Kastning, although defendant's. counsel, during the trial admitted to plaintiff's counsel that he knew that

this was not true, but that he had been instructed to inject these matters into the lawsuit by the insurance carrier he was representing."

■ There is nothing in the record to support this assignment. There is no statement anywhere in the record that the doctor "offered" the case to plaintiff's counsel. During defendant's opening statement, the following exchange took place. Defendant's counsel stated: "The evidence will show that they went to Dr. Kastning, and, of course, we do not know what went on in there, but, at any rate, Dr. Kastning suggested that they get Mr. Dinger—." At that point Mr. Dinger, plaintiff's counsel, stated: "I object to that. I hope he has some information that Dr. Kastning did suggest he get me * * *," to which defendant's counsel replied, "This information comes from Mr. Miller himself." The objection was sustained, and the matter was not again mentioned throughout the trial except by plaintiff's counsel in his closing argument. Mr. Miller was never called as a witness. This was mentioned in defendant's argument.

■ As for the alleged statement made during the trial by plaintiff's counsel, there is nothing in the record in relation to this, and we are confined in our review to the record and not to alleged facts contained in the brief and unsupported by the record. We take the record as we find it, and we neither add to nor subtract from it. In re McMenamy's Guardianship, 307 Mo. 98, 270 S.W. 662, l. c. 668; Wilson v. Motors Insurance Corporation, Mo.App., 349 S.W.2d 250; E. C. Robinson Lumber Company v. Lowrey, Mo.App., 276 S.W.2d 636.

We find nothing meriting a new trial in the foregoing point.

The third assignment of error upon which the court granted a new trial is as follows:

"The defendant introduced incorrect evidence highly prejudicial to plain-

tiff's cause—specifically, incorrect records were introduced and testified from by defendant's witness concerning plaintiff's absence from school at the time of and following the accident."

■ This refers to the school records introduced by the defendant. The witness had brought records showing William's attendance for the entire year of 1959. The first records that he referred to covered the school year 1958 and 1959. This did not include the records for September, 1959, which were in the book for the school year 1959 and 1960. When this error was disclosed, he used the proper book, which covered the period in question. The mistake was completely understood, and no objection of any kind was made. There was nothing erroneous connected with the matter except an obvious and admitted mistake by the witness. So the matter could have had no effect whatsoever upon the trial.

The fourth assignment upon which the motion for a new trial was sustained is as follows:

"Defendant's counsel erroneously commented on matters of pleading which had been previously ruled inadmissible—specifically, defendant's counsel commented upon the nature of the injuries and the amount of prayer as included in plaintiff's petition in the final argument all to the prejudice of plaintiff."

■ There is no reference to the pleadings in the defendant's counsel's argument, and he had a perfect right to comment upon the injuries which were in litigation.

This assignment is also without merit. The last assignment on which motion for a new trial was sustained is as follows:

"Defendant's counsel commented in his closing argument that the entire plaintiff's case was a fraud upon the jury and the Court, including in his comment the unquestionable inference that plaintiff's counsel was the in-

stigator and perpetrator of the fraud, all to the prejudice of plaintiff."

■ Again, the assignment is not borne out by the record. The argument of defendant's counsel pointed out that an ordinary bruise had been exaggerated out of all proportion, and that there were gross discrepancies in the plaintiff's case. This was true. It is also true that there was not an objection made by the defendant's counsel.

■ The plaintiff argues that the trial court has wide discretion in granting a new trial, even though the errors complained of were not properly raised or preserved for review. We are cited to Supreme Court Rule 79.04, V.A.M.R. We are well aware that the trial court has wide discretion in passing on motions for a new trial. This is limited to questions of fact and matters affecting the determination of issues of fact, but the jury's verdict may not be arbitrarily vacated. The trial court may not be permitted to set aside the verdict of a jury unless some legal ground is shown which may properly be the basis for such action. Mavrakos v. Mavrakos Candy Co., 359 Mo. 649, 223 S.W.2d 383; Blanford v. St. Louis Public Service Co., Mo. Sup., 266 S.W.2d 718; Wallace v. Whitzel, Mo.App., 324 S.W.2d 157; Brown v. Kansas City, Mo.App., 311 S.W.2d 360.

The plaintiff suggests that he is aided, in some unstated respect, by Supreme Court Rule 79.04, V.A.M.R., which is as follows:

"Plain errors affecting substantial rights may be considered on motion for a new trial or on appeal, in the discretion of the court, though not raised in the trial court or preserved for review, or defectively raised or preserved, when the court deems that manifest injustice or miscarriage of justice has resulted therefrom."

■ As pointed out, we find no errors properly raised or otherwise existing in the record that affected any substantial right

or resulted in a miscarriage of justice. It should also be pointed out that this rule is not a refuge for those who negligently fail to make proper objections. Critcher v. Rudy Fick, Inc., Mo.Sup., 315 S.W.2d 421. It was an abuse of discretion for the trial court to grant a new trial upon the grounds specified.

We find no error in the trial below, except the error of the court in sustaining the motion for a new trial. The order of the trial court, setting aside the verdict and judgment for the defendant and granting a new trial, is reversed and the cause remanded with directions to reinstate the verdict and judgment for the defendant.

ANDERSON, P. J., concurs.

RUDDY, J., not sitting.