**Billy D. LANE, Plaintiff,**

v.

**Osby E. WILSON, Defendant and Cross-Claimant-Appellant,**

and

**Gene Arthur Fields, Defendant-Respondent.**

No. 8353.

Springfield Court of Appeals.

Missouri.

May 20, 1965.

J. V. White, Rolla, J. W. Grossenheider, Lebanon, for defendant and cross-claimant-appellant.

Northern & Crow, Rolla, for defendant-respondent.

STONE, Judge.

Billy D. Lane, as plaintiff, instituted suit against Osby E. Wilson and Gene Arthur Fields, as defendants, to recover damages for personal injuries alleged to have been sustained by Lane in a collision between a motorcycle driven by Wilson, on which Lane was riding as a passenger, and an automobile driven by Fields. In due time, defendant Wilson filed a cross-claim against codefendant Fields [V.A.M.R. Rule 55.49], in which Wilson sought damages of $12,-000 for personal injuries alleged to have resulted from the same collision. Thereafter, plaintiff Lane dismissed his petition as to both defendants, and Wilson's cross-claim came on for trial before the court and a jury. At the close of the evidence offered by cross-claimant Wilson, defendant Fields' motion for a directed verdict was granted by the trial court. V.A.M.R. Rule 72.01. After unavailing motion for a new trial, cross-claimant Wilson has perfected this appeal from the adverse judgment entered upon the verdict thus directed.

The only negligence alleged in the cross-claim was that defendant Fields had failed, under the humanitarian doctrine, to avert the collision "by swerving his automobile to its right." In granting defendant's motion for a directed verdict, the trial court found "no evidence of any probative force from which the jury could determine when [cross-claimant] Wilson came into a position of imminent peril" and "no evidence to support" the single assignment of negligence in the cross-claim. Since the sole issue raised in cross-claimant's motion for a new trial and presented on this appeal is whether he made a submissible case under the humanitarian doctrine for defendant's alleged failure to swerve to the right, a detailed statement of facts is required.

Our factual review is with appropriate recognition of the basic rule that, in determining whether a submissible case was made, we must consider the evidence in the light most favorable to cross-claimant and must accord to him the benefit of all supporting inferences fairly and reasonably deducible from the evidence [DeLay v. Ward, 364 Mo. 431, 439, 262 S.W.2d 628, 633(3); Ornder v. Childers, Mo., 327 S.W.2d 913, 915(1); Appelhans v. Goldman, Mo., 349 S.W.2d 204, 208(8)], tempered only by the sensible and sound limitation that this rule calls for consideration of all the facts shown by cross-claimant and not merely a part of them isolated from the remainder, and that the rule does not require the court to supply missing evidence,

or to disregard the dictates of common reason and accept as true that which, on the whole record, obviously is not true, or to give cross-claimant the benefit of inferences which are not reasonable. Kirks v. Waller, Mo., 341 S.W.2d 860, 863(3); Holland v. Lester, Mo.App., 363 S.W.2d 75, 80; Reames v. St. Louis-San Francisco Ry. Co., Mo.App., 359 S.W.2d 230, 235(2).

The time of accident was about 3:30 P.M. on Sunday, May 20, 1962, a dry, sun-shiny day. The place of accident was on a graveled country road (which, in the interest of descriptive clarity, we treat as running north and south) about 4½ miles north of Duke in the southwest corner of Phelps County, Missouri. With Lane riding as a passenger, cross-claimant, then 16 years of age, was *northbound* on a 1953 Harley-Davidson motorcycle, which he had operated previously and "knew how to handle," en route from Duke to the farm home where he resided with his parents. His brother, Vernon Wilson, then 19 years of age, was in an automobile following the motorcycle at a distance of about 200 feet. Both cross-claimant and his brother placed the speed of the motorcycle at 20 to 25 miles per hour.

The other vehicle involved in the accident was a *southbound* 1959 Ford driven by defendant Fields, then 22 years of age, of O'Fallon, Missouri. Accompanied by his bride, defendant was on his honeymoon, "going on a fishing trip," and as he approached the point of accident (so he said) was "going pretty slow" at an estimated speed of 10 to 15 miles per hour because he was "lost." Cross-claimant thought that, when he first sighted defendant's automobile, it was traveling about 20 miles per hour.

The collision occurred on what cross-claimant's brother described as "a pretty sharp curve," which was a curve to the left for northbound vehicles such as the motorcycle and a curve to the right for southbound vehicles such as defendant's automobile. On and near the curve, there were three ruts or tracks in the graveled surface of the road; and, although none of the witnesses undertook to estimate elevations or the distance from any track to either edge of the road, cross-claimant's photographic exhibits sufficiently demonstrate that, as is usually true, the elevation on the outside of the curve was somewhat higher than the elevation on the inside, the west rut or track hugged the inside of the curve and was quite close to the west edge of the road, and the middle rut or track was on the west side of the imaginary center line of the road.

Cross-claimant readily conceded that, when he entered the south end of the curve, his northbound motorcycle was in the west rut or track, thereby placing him on the inside of the curve and on his left-hand and wrong side of the road. While thus traveling in the west rut or track, cross-claimant sighted defendant's approaching southbound automobile, then 200 to 300 feet distant and admittedly on its right-hand or west side of the road with its right wheels in the west rut or track and its left wheels in the center rut or track. Cross-claimant's reaction, upon sighting defendant's automobile, was to turn to his right, or toward the east—"I went to my side as fer (sic) as I could get and I hit loose gravel . . . and I couldn't make it any further." His brother, following the motorcycle, "saw the boys lean it [the motorcycle] over to get it over on their side, and then I seen the car, and then they hit two or three seconds after." The motorcycle struck the outside left dual headlight on the automobile. There was no evidence as to whether the speed of the motorcycle had slackened prior to the crash.

The precise point on the road, at which the impact occurred, was in dispute. *Defendant* stated that, although already hugging the inside of the curve on his right-hand side of the road, he "pulled" even farther to his right and brought his automobile to a complete stop prior to the crash. This would have placed the point of impact several feet on the west (defendant's right-

hand) side of the imaginary center line of the road. *Cross-claimant's* version of the facts, accepted by us in ruling the issue of submissibility, was that the collision occurred on his right-hand side of the road. The character of the testimony to this effect is exemplified by cross-claimant's statements that "I seen it [defendant's automobile] swerve and come to my side" and that, "when I first seen him [defendant] he cut the car and I judge that the rear end stayed about two feet [from the west ditch] and the front end come over on my side of the road." In like vein, cross-claimant's brother said that, at the moment of collision, defendant's Ford "was sittin' kinda catty-cornered up towards the middle of the road" with "the front end up towards the middle" and the rear end "about two foot, I guess," from the west ditch. The location of the point of impact with reference to the imaginary center line was not established more definitely by cross-claimant's *oral* evidence. However, cross-claimant and his brother did fix the point of impact on one of the photographic exhibits, both by marking an "X" on, and by punching a pinhole in, the exhibit; and, although this obviously does not permit of a precise location of the point, it does enable us to say with assurance that, if in fact the collision occurred on cross-claimant's right-hand side of the road (as to which the exhibit standing alone would leave us in doubt), the point of impact must have been quite near to the imaginary center line.

Regardless of the precise location of the point of impact, it is clear that defendant had brought his automobile to a complete stop prior to the collision. The only evidence on this subject was defendant's positive testimony to that effect; and, in the course of trial, it was brought out that cross-claimant had so admitted in his pleadings.

As a result of the collision, cross-claimant and his passenger were thrown from the motorcycle (one witness said for a distance of 50 to 75 feet), and the cycle not only was "demolished" but also "caught on fire." Although the injuries suffered by cross-claimant are not material on this appeal and the medical evidence was omitted from the transcript, it may not be inappropriate to record that the lay testimony indicated that his principal injuries were compound fractures of both legs.

■ The first and basic fact of liability under the humanitarian doctrine is a position of imminent peril. Banks v. Morris & Co., 302 Mo. 254, 267, 257 S.W. 482, 484; Hendrick v. Kurn, 352 Mo. 848, 850, 179 S.W.2d 717, 719; Anderson v. Prugh, 364 Mo. 557, 565, 264 S.W.2d 358, 364(8). "The peril truly must be imminent—that is, certain, immediate, and impending; it may not be remote, uncertain or contingent. A likelihood or bare possibility of injury is not sufficient to create imminent peril." Blaser v. Coleman, 358 Mo. 157, 160, 213 S.W.2d 420, 421(2); Kelley v. St. Louis Public Service Co., Mo., 248 S.W.2d 597, 602; Wilson v. Toliver, 365 Mo. 640, 285 S.W.2d 575, 583(13). And it is only when such imminent peril arises that the humanitarian doctrine, blotting out antecedent negligence, seizes upon the then existing situation and imposes the duty *thereafter* to exercise proper care to avoid inflicting the threatened injury. Ornder v. Childers, supra, 327 S.W.2d at 916(3); Downing v. Dixon, Mo.App., 314 S.W.2d 927, 930(3); Batson v. Ormsbee, Mo.App., 304 S.W.2d 680, 683(4).

■ Whether and when one becomes chargeable with notice that another is in a position of imminent peril depends upon the *reasonable appearances* of the situation confronting him. In short, " '[i]t is the reasonable appearances of the situation that imposes the duty to act.' " Faught v. Washam, Mo., 329 S.W.2d 588, 597, and cases cited in footnote 12; Daniels v. Smith, Mo., 323 S.W.2d 705, 710(5); Nored v. St. Louis Public Service Co., Mo., 319 S.W.2d 608, 611; Wilson v. Toliver, Mo., 305 S.W.2d 423, 429; Farmer v. Taylor, Mo.App., 301 S.W.2d 429, 432(4). Hence,

what constitutes a position of imminent peril varies according to, and must be determined in the light of, the facts and circumstances of each particular case. Yarrington v. Lininger, Mo., 327 S.W.2d 104, 110(9); Elkin v. St. Louis Public Service Co., 335 Mo. 951, 956–957, 74 S.W.2d 600, 603; Kasperski v. Rainey, Mo.App., 135 S.W.2d 11, 14(4).

■ Under cross-claimant's factual version, what were the *reasonable appearances* of the situation when defendant *first* sighted cross-claimant? Defendant, on the extreme west (his right-hand) side of the road and proceeding at a moderate speed of about 20 miles per hour, saw cross-claimant on his motorcycle approaching at a similarly moderate speed of 20 to 25 miles per hour. Although cross-claimant also was on the west (his left-hand) side of the road, he obviously and admittedly was then in complete control of his motorcycle and was *not* oblivious. Certainly, the speed of the motorcycle did not indicate recklessness, want of control, or inability to turn. Cf. Findley v. Asher, Mo., 334 S.W.2d 70, 73. With the two vehicles *then* 200 to 300 feet apart and traveling at the stated speeds, cross-claimant undoubtedly had sufficient time and space within which to turn his motorcycle from the pathway of defendant's automobile (as was confirmed by his positive testimony that, prior to the collision, he *did turn* from his left-hand side of the road to his right-hand side thereof), and defendant *then* had a right to assume that cross-claimant would so turn. McGuire v. Steel Transportation Co., 359 Mo. 1179, 1184, 225 S.W.2d 699, 702(4, 5); Moore v. Middlewest Freightways, Inc., Mo., 266 S.W.2d 578, 582(2); Keely v. Arkansas Motor Freight Lines, Mo., 278 S.W.2d 765, 769; Stanton v. Jones, 332 Mo. 631, 59 S.W.2d 648(16); Bunch v. Crader, Mo.App., 369 S.W.2d 768, 773(10); Columbia Taxicab Co. v. Roemmich, Mo.App., 208 S.W. 859, 862(2). We conclude that cross-claimant was not *then* (i. e., when he *first* sighted defendant's automobile) in a position of imminent peril within the contemplation of the humanitarian doctrine. See particularly Standard Oil Co. v. Crowl, 8 Cir. (Mo.), 198 F.2d 580, 582.

For that matter, as we understand the printed brief and oral argument of his counsel, cross-claimant's principal contention is *not* that he was in a position of imminent peril when he *first* sighted defendant's automobile 200 to 300 feet distant, but rather that he *thereafter* came into such position of imminent peril by reason of two circumstances, namely, (1) that defendant swerved to his left so that the left front portion of his automobile was across the imaginary center line of the road when he stopped, and (2) that cross-claimant, although having returned to the east (his right-hand) side of the road, skidded or lost control in loose gravel and for that reason was unable to move farther to his right and avoid collision with the then stationary automobile. So, the complaint of cross-claimant's counsel in their brief is that: "He [defendant] further admits that [after stopping his automobile] he remained in this position with his motor running and his car [transmission] in drive position from two to four seconds until this motorcycle which was traveling twenty to thirty miles per hour struck the left front fender of his car. Obviously, when [defendant] Fields stopped his car, if [cross-claimant] Wilson was not then in a position of imminent peril, sometime during the next four seconds while the motorcycle (traveling 29 feet per second) went 116 feet, Wilson did come into a position of imminent peril. Again, by his own admission, Fields testified that in order to turn his car to its right while he was sitting there in the road, he merely had to place his foot on the accelerator and turn his steering wheel to its right; so it would seem that he had the means at hand with which to have avoided this collision." Otherwise cast, cross-claimant's charge is that he came into a position of imminent peril after defendant's automobile had stopped and that defendant was guilty of

humanitarian negligence in failing thereafter to put his automobile in forward motion again and swerve to his right.

In pressing this theory, cross-claimant's counsel point to certain bits of testimony elicited from defendant (called by them as an adverse witness) to the effect that, immediately prior to the collision, his automobile remained stationary for "from two to four seconds" with the motor running and the gearshift lever in "drive" position. Taking defendant's testimony as a whole, as we must do [Dimond v. Terminal R. R. Ass'n. of St. Louis, 346 Mo. 333, 353, 141 S.W.2d 789, 799(12); Garrard v. State Dept. of Public Health & Welfare, Mo. App., 375 S.W.2d 582, 592(25); Haire v. Stagner, Mo.App., 356 S.W.2d 305, 310(6)], we doubt whether it would justify or permit a finding that the automobile remained stationary for "from two to four seconds" prior to the accident. Carrow v. Terminal R. Ass'n. of St. Louis, Mo.App., 267 S.W.2d 373, 378–379; Hoffman v. Illinois Term. R. Co., Mo.App., 274 S.W.2d 591, 593(1); Batson v. Ormsbee, supra, 304 S.W.2d at 682. When first asked "how long were you stopped . . .," defendant answered "it's pretty hard to say; it could be all the way from two to four seconds." But, when pressed to say that two to four seconds was his "best judgment," he elaborated, "could be one; could be two; could be three; I have—really, I have no idea . . . it happened pretty quick."

■ However, if it be assumed for the purposes of this inquiry that, immediately prior to the collision, defendant's automobile did remain stationary for "from two to four seconds" with the motor running and the gearshift lever in "drive" position, that would not, in and of itself, make a submissible case of humanitarian negligence. For, the humanitarian doctrine imposed upon defendant no duty to act until cross-claimant came into a position of imminent peril. Schmidt v. Allen, Mo., 303 S.W.2d 652, 657(6); Ukman v. Hoover Motor Express

Co., Mo., 269 S.W.2d 35, 38(3); Newman v. St. Louis Public Service Co., Mo. (banc), 244 S.W.2d 45, 48(2). And defendant could not have been liable under the humanitarian doctrine unless, after he knew or should have known of cross-claimant's position of imminent peril, he *then* had the present ability with the means at hand to have averted the impending harm without injury to himself or others. Davis v. St. Louis Public Service Co., Mo., 316 S.W.2d 494, 497(6); West v. St. Louis-San Francisco Ry. Co., Mo., 295 S.W.2d 48, 52(5); Wapelhorst v. Lindner, Mo., 269 S.W.2d 865, 871(8); Glenn v. Offutt, Mo.App., 309 S.W.2d 366, 369(5).

■ Accordingly, *when* and *where* cross-claimant came into a position of imminent peril were matters of prime importance. Although it is true that the precise time when, and place where, one comes into a position of imminent peril are for determination by the triers of the facts [Welch v. McNeely, Mo., 269 S.W.2d 871, 876(10); Romandel v. Kansas City Public Service Co., Mo., 254 S.W.2d 585, 593; Stith v. St. Louis Public Service Co., 363 Mo. 442, 450, 251 S.W.2d 693, 698(7), 34 A.L.R.2d 972], nevertheless the burden rested on cross-claimant to establish every essential element of his humanitarian cause of action by substantial evidence of probative value or by inferences fairly and reasonably deducible therefrom [Vietmeier v. Voss, Mo., 246 S.W.2d 785, 787(1)], and to adduce evidence of such character from which the jury fairly and reasonably might have found when and where he (cross-claimant) did, in fact, come into a position of imminent peril. Yarrington v. Lininger, supra, 327 S.W.2d at 109(7); Shirley v. Norfleet, Mo., 315 S.W.2d 715, 723(5); East v. McMenamy, Mo., 266 S.W.2d 728, 731–732(5); Kasten v. St. Louis Public Service Co., Mo.App., 266 S.W.2d 1, 4(3). "Evidence that is merely speculative, a guess or conjecture is not sufficient for a jury to find where the position of imminent peril began." Paydon v. Globus, Mo., 262 S.W.

2d 601, 603; Yarrington v. Lininger, supra, 327 S.W.2d at 109(7); Holland v. Lester, supra, 363 S.W.2d at 80.

Nothing in the record before us indicates that the *reasonable appearances* of the situation confronting defendant were such that he should have been charged with notice that cross-claimant was in a position of imminent peril at any time before his motorcycle, *then* on the east (his right-hand) side of the road, "hit loose gravel"; and there is no evidence from which the jury reasonably could have inferred or found either (a) the space intervening between defendant's automobile and the motorcycle when the latter "hit loose gravel" or (b) the time thereafter elapsing to the moment of impact. Neither did counsel seek, nor any witness offer, an estimate as to the length of time which would have been required, after cross-claimant came into a position of imminent peril, for defendant to have taken effective evasive action, i. e., to have taken his foot off the brake pedal, placed it on the accelerator, started his automobile forward, and swerved it to his right a sufficient distance to have avoided the collision. At this point, it may be noted that, if defendant was negligent in swerving to his left and stopping with the left front portion of his automobile across the imaginary center line of the road (as cross-claimant's evidence ran), that was *primary, not humanitarian,* negligence. Davis v. Quality Oil Co., Mo., 353 S.W.2d 670, 675.

■■■■■ A case may not be submitted under the humanitarian doctrine where it rests solely upon speculation, conjecture and surmise [Yeaman v. Storms, 358 Mo. 774, 779, 217 S.W.2d 495, 499; Bauer v. Wood, 236 Mo.App. 266, 270, 154 S.W.2d 356, 359(6)], either with respect to the basic element of a plaintiff's (or cross-claimant's) position of imminent peril [Paydon v. Globus, supra, 262 S.W.2d at 603; Hendrick v. Kurn, supra, 352 Mo. at 851, 179 S.W.2d at 719(6); Hartlage v. Halloran, Mo.App., 331 S.W.2d 197, 200; Kasten v. St. Louis Public Service Co., supra, 266 S.W.2d at 4] or with respect to the equally essential element of defendant's ability, after notice of such imminent peril, to have averted the accident with the means at hand. Begley v. Connor, Mo., 361 S.W.2d 836, 842–843(8); Stephens v. Thompson, Mo., 293 S.W.2d 392, 395(7–9); Meese v. Thompson, 344 Mo. 777, 783, 129 S.W.2d 847, 850; Holland v. Lester, supra, 363 S.W.2d at 81–82; Swain v. Anders, 235 Mo.App. 125, 133, 140 S.W.2d 730, 736(9). Thoughtful examination of the numerous authorities hereinbefore cited and careful study of the record submitted, which we must take as it comes to us [Bennett v. Wood, Mo., 239 S.W.2d 325, 327(2); Miller v. Dowling, Mo.App., 360 S.W.2d 345, 348(3)], impel the considered conclusion that instant cross-claimant did not remove his case from the realm of shimmering speculation and sheer surmise as to either of the above-discussed elements, namely, as to when and where he came into a position of imminent peril and as to defendant's ability thereafter to have averted the collision with the means at hand.

Without further extending this opinion by detailed discussion of the cases cited in cross-claimant's brief, suffice it to say that all of them have been examined, and that none are factually analogous to, or legally persuasive upon, the particular facts and circumstances of the situation in suit.

The judgment for defendant is affirmed.

RUARK, P. J., and HOGAN, J., concur.